## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY TOSCO                          :
    and                                 :
TOSCO ELITE, LLC                       :
                                        :
        Plaintiffs,          :
                                        :
    vs.                                 :
                                        :
BALDRIDGE REAL ESTATE, INC.;           :
GUNNA DEVELOPMENT, LLC;                :
GUNDAKER COMMERCIAL GROUP;             :   NO. 07-CV-324
BALDRIDGE-MIDDLETOWN, LLC              :
aka GUNNA-MIDDLETOWN, LLC aka          :
GUNNA-MIDDLETOWN, LLC;                 :
BALDRIDGE-BRICK, LLC aka               :
GUNNA-BRICK, LLC; BALDRIDGE-           :
BAYVILLE, LLC aka GUNNA-               :
BAYVILLE, LLC; and BALDRIDGE-          :
RIO GRANDE, LLC aka GUNNA-RIO          :
GRANDE, LLC,                           :
                                        :
        Defendants.          :

## ORDER

AND NOW, this _____ day of _____, upon consideration of

Defendants' Motion for Summary Judgment and For Sanctions under 28 U.S.C. §1927, and any

response thereto, it is hereby ORDERED and DECREED that Defendants' Motion for Summary

Judgment is GRANTED.  Counts IV - IX  and XII are hereby DISMISSED WITH PREJUDICE.

It is further ORDERED that Defendants' motion for sanctions is GRANTED and Plaintiffs are

ordered to pay Defendants their reasonable attorneys' fees and costs relating to the defense of the

New Jersey Site Claims.  Defendants are ordered to submit a fee petition within

P0046177.DOC

ten (10) days of the date of this Order in support of their sanctions motion.

BY THE COURT:

_____
BUCKWALTER, J.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY TOSCO<br>and<br>TOSCO ELITE, LLC<br><br>Plaintiffs,<br><br>vs.<br><br>BALDRIDGE REAL ESTATE, INC.;<br>GUNNA DEVELOPMENT, LLC;<br>GUNDAKER COMMERCIAL GROUP;<br>BALDRIDGE-MIDDLETOWN, LLC aka<br>GUNNA-MIDDLETOWN, LLC aka<br>GUNNA-MIDDLETOWN, LLC;<br>BALDRIDGE-BRICK, LLC aka GUNNA-<br>BRICK, LLC; BALDRIDGE-BAYVILLE,<br>LLC aka GUNNA-BAYVILLE, LLC; and<br>BALDRIDGE-RIO GRANDE, LLC aka<br>GUNNA-RIO GRANDE, LLC,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:  NO. 07-CV-324<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927

Defendants, through their undersigned attorneys, hereby file their motion for summary

judgment and for sanctions pursuant to 28 U.S.C. § 1927 against Plaintiffs.  For the reasons set

forth in the accompanying memorandum of law, which is incorporated herein by reference,

Defendants respectfully request that their motions be granted.

Respectfully submitted,

THORP REED & ARMSTRONG, LLP

By: LCE3311
Lisa Carney Eldridge, Esquire
Lisa M. Swan, Esquire
Attorneys for Defendants

Dated:  December 5, 2007

P0046177.DOC

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY TOSCO**<br>and<br>**TOSCO ELITE, LLC**<br><br>           Plaintiffs,<br><br>    vs.<br><br>**BALDRIDGE REAL ESTATE, INC.;**<br>**GUNNA DEVELOPMENT, LLC;**<br>**GUNDAKER COMMERCIAL GROUP;**<br>**BALDRIDGE-MIDDLETOWN, LLC aka**<br>**GUNNA-MIDDLETOWN, LLC aka**<br>**GUNNA-MIDDLETOWN, LLC;**<br>**BALDRIDGE-BRICK, LLC aka GUNNA-**<br>**BRICK, LLC; BALDRIDGE-BAYVILLE,**<br>**LLC aka GUNNA-BAYVILLE, LLC; and**<br>**BALDRIDGE-RIO GRANDE, LLC aka**<br>**GUNNA-RIO GRANDE, LLC,**<br><br>           Defendants. | NO. 07-CV-324 |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927

## I.    INTRODUCTION

Plaintiff Anthony Tosco is a Pennsylvania real estate broker who performed certain

buyer's broker work for defendant Baldridge Real Estate, Inc. ("Baldridge Real Estate"), a

commercial real estate development company that buys, develops and leases property to clients

such as Autozone and Rite Aid.  Tosco claims that he is owed certain commissions on two

Pennsylvania properties[1] and an ownership interest and "reimbursement" of costs in the amount

---

[1] The two Pennsylvania sites at issue are referred to as the "Pennsburg Site" and the "Quakertown Site."

of $60,000 per site for five properties in New Jersey.[2] All of Tosco's claims are ripe for summary judgment in favor of Defendants except for two – a claim for commission owed on the Pennsburg Pennsylvania Site and a claim for 20% ownership interest in the Rio Grande Site.[3] Though Defendants have defenses to those claims, the determination of those claims are subject to factual disputes and credibility determinations that are inappropriate for determination by way of summary judgment. As to Tosco's other claims, however, there are no genuine issues of material fact in dispute and Defendants are entitled to judgment as a matter of law in their favor.

This is particularly true for the New Jersey Site Claims[4] as it has become clear in discovery that Tosco's claims regarding the New Jersey Sites are baseless, without any factual or legal foundation and presented solely to unreasonably and vexatiously multiply these proceedings and needlessly increase the cost of this litigation. The New Jersey Site Claims should not only be dismissed with prejudice but should also result in sanctions against Tosco's lawyers, Penna, Grabois & Assoc., Inc., in the form of payment of reasonable attorneys' fees and costs incurred by Defendants in defending against the bogus New Jersey Site Claims.

The dismissal of the New Jersey Site Claims and imposition of sanctions against Tosco's lawyers are particularly warranted because it was recently discovered that Tosco created a sham

---

[2] The New Jersey properties are referred to as the Lacey Site, Brick Site, Middletown Site, Bayville Site and Rio Grande Site (hereinafter, the "New Jersey Sites"). Plaintiffs are no longer asserting any claims to the Mantua Site. Tosco claims a 10% ownership interest in the Lacey Site, Brick Site, Middletown Site and Bayville Site based on an alleged oral agreement (Counts V – IX) and a 20% ownership interest in the Rio Grande Site based on a written agreement (Counts X and XI). *See* Complaint (Ex. "A").

[3] The Pennsburg claim is set forth in Counts I-III of the Complaint and the Rio Grande 20% ownership claim is set forth at Counts X an XI of the Complaint.

[4] Reference to the "New Jersey Site Claims" means those claims made in Counts IV-IX asserting a claim for 10% ownership in the Lacey, Brick, Middletown and Bayville Sites and a $60,000 "reimbursement" as to each of those four sites and the Rio Grande Site. It does not include the claim to a 20% ownership interest in the Rio Grande Site in Counts (X and XI). *See* Complaint (Ex. "A").

"buyer's broker" commission letter purportedly to him from Baldridge Real Estate in a

fraudulent attempt to seek $60,000 per site in commissions from Baldridge Real Estate with

regard to properties in New Jersey. Defendants' forensic computer consultants determined that

the $60,000 commission letter, dated August 12, 2004, was created by Tosco on his computer

(Ex. "H"). In addition, a handwriting expert has determined that the signature on that $60,000

commission letter has a high probability of not being genuine (Ex. "P").

Not only did Tosco fraudulently create the $60,000 per site commission letter, but he also

perjured himself during both days of his deposition and made allegations in the Complaint

regarding the $60,000 commission letter that are clearly untrue. *See* Complaint (Ex. "A") at

¶ 69. Tosco lied under oath by testifying that the self-fabricated $60,000 commission letter came

from Baldridge Real Estate and that he had nothing to do with the drafting of the letter. In fact,

he even claims that he "disagreed" with the contents of the letter that he forged because it

allegedly did not reflect his "prior oral agreement" with Baldridge Real Estate that he would get

a 10% ownership interest in the New Jersey Sites and $60,000 per site in "reimbursements."[5]

Tosco is clearly tripping over his own lies. The discovery that the $60,000 commission

letter is a sham created by Tosco himself makes clear his entire testimony regarding an alleged

"prior oral agreement" regarding the New Jersey Sites is also a sham. He claims that Baldridge

unilaterally tried to change their alleged prior oral agreement by the August 12, 2004 letter

(Complaint at ¶ 69), but Tosco himself created that letter. It simply makes no sense. Not only

did Tosco perjure himself regarding the $60,000 commission letter that he created, but he

---

[5] Defense counsel suspects that Tosco subsequently learned that he could not seek to enforce the payment of **commissions** on the New Jersey Sites because he is not a licensed broker in New Jersey, and thus changed his story to allege a prior "oral agreement" with Baldridge Real Estate to give him 10% ownership interest in the New Jersey Sites and a $60,000 "reimbursement" per site.

admitted that the alleged "oral agreement" with Baldridge was rescinded by Baldridge Real Estate well before closing on any of the New Jersey Sites in question and that he agreed to continue working under those changed terms.

## II.    BACKGROUND

### A.  Gist of the Action

The dispute here is a fairly straightforward claim of breach of contract between Anthony Tosco and Tosco Elite, LLC, his solely-owned real estate broker/brokerage firm (collectively, "Tosco"), and Baldridge Real Estate.  Baldridge Real Estate is a national, commercial real estate development company based in St. Louis, Missouri, for whom Tosco performed certain "buyer's broker" services.  Tosco claims it is owed certain commissions as well as an ownership interest in five New Jersey sites purchased by Baldridge Real Estate based on alleged oral and/or written contracts.  The Complaint, however, is fairly confusing because Tosco names various entities as Defendants who have no legal obligations to Tosco and also lists various theories of relief imbedded within a single cause of action.

### B.  The Defendants

It is undisputed that all of Tosco's work was performed for Baldridge Real Estate only. *See* Deposition Transcript of Anthony Tosco ("Tosco Dep.") at pp. 274, 277-278 (Exhibit "B" hereto);[6] Deposition Transcript of Michael J. Hejna ("Hejna Dep.") at p. 78 ("Prior to the suit being filed, I had never heard of Tosco.") (Exhibit "C" hereto).  It is also undisputed that all of the alleged oral and written contracts upon which Tosco is claiming to rely here were with Baldridge Real Estate only. *See* Complaint (Ex. "A") at ¶¶ 5, 48, 56-59, 61-62, 116-119; Tosco

---

[6] Tosco's deposition occurred over two days.  For ease of reference, the relevant excerpts of the transcript are attached together as Exhibit "B."

4

Dep. (Ex. "B") at pp. 274, 277-278.  Instead of suing Baldridge Real Estate alone, however,

Tosco and his counsel threw out a wide net over various other defendants regardless if there was

any basis in fact or law to do so.

Tosco has named as defendants various limited purpose, limited liability companies

("Defendant LLCs") that own the five New Jersey Sites that Tosco claims a 10% ownership

interest in.[7]  He also sued Gunna Development, LLC, a commercial real estate development

company that purchased the properties at issue here (along with approximately 30 others) from

Baldridge Real Estate, Kenneth R. Baldridge and C. Allen Kann in August, 2005.[8]  Gunna's

parent company, Gundaker Commercial Group ("Gundaker"), is also named as a defendant

based on its alleged "partnership" with Gunna Development, LLC.

## C. The New Jersey Site Claims

Counts V, VI, VII, IIX [sic] and IX of the Complaint allege that Tosco and Baldridge

entered into a verbal agreement in which Tosco and Baldridge Real Estate agreed to act as "co-

venturers" for the acquisition of real estate in New Jersey.  *See* Complaint (Ex. "A") at ¶ 61.

According to the Complaint, Tosco's share of the "co-venture" would be ten percent interest

(10%) in any real estate acquired in New Jersey and $60,000.00 at the final closing of each site

in order to "reimburse" Tosco for the reasonable value of the time and expense working on the

---

[7] It was and is Baldridge Real Estate's normal course of business to transfer its interest in real estate sites into a limited purpose limited liability company at closing.  Those "LLCs" were owned 80% by Baldridge and 20% by Kann prior to the sale of the LLCs to Gunna Development in August 2005.  *See* Deposition Transcript of Kenneth Baldridge ("Baldridge Dep.") (Ex. "U") at pp. 5-10; Deposition Transcript of C. Allen Kann ("Kann Dep.") (Ex. "D") at pp. 23-25.

[8] After the sale to Gunna of the LLCs at issue here, the names of the LLCs were changed from Baldridge-[site] to Gunna-[site].  *See* Kann Dep. (Ex. D) at pp. 23-25; Affidavit of Michael J. Hejna ("Hejna Affidavit") (Ex. "E"), which was previously submitted in opposition to Tosco's Motion to Amend the Complaint.

alleged co-venture. *Id.* at ¶¶ 65-66.  The Complaint further states that "by August of 2004" Tosco "had successfully acted for the co-venture" by acquiring various purchase contracts but that Baldridge Real Estate, through C. Allen Kann, "unilaterally informed Plaintiffs that it was canceling their agreement to provide Plaintiffs with a ten percent (10%) ownership interest in those aforesaid sites, but that it would pay Tosco the sum of $60,000 at the closing of each site as compensation for their efforts. *See* Complaint (Ex. "A") at ¶¶ 68-69.  Discovery in this matter has proven these allegations to be false.

### 1.     Tosco's Fabrication of the $60,000 Commission Letter

In their initial disclosures, Tosco produced a letter dated August 12, 2004 purportedly from Baldridge Real Estate and purportedly signed by Allen Kann that promised Tosco a "buyer's broker" commission of  $60,000 per site for all Autozone Sites that he worked on for Baldridge Real Estate in New Jersey and various other states that were successfully closed.  *See* August 12, 2004 letter (Ex. "F").  This fake $60,000 commission letter was also sent by Tosco's attorneys to Mr. Kann during an attempt to try and obtain alleged unpaid commissions for Tosco back in July 2005 – about 1 ½ years before the Complaint here was filed.  *See* Tosco Dep. (Ex. "B"), at pp. 316-318, and letter to C. Allen Kann from Dominic A. Penna, Esquire dated July 27, 2005 (Ex. "G") which attached the sham $60,000 commission letter along with other documents as "proof" of what was allegedly owed Tosco.

Allen Kann, former Executive Vice-President of Baldridge Real Estate, and the purported signatory to the August 12, 2004 letter, testified under oath that he had not authored the $60,000 commission letter, had never seen the letter prior to Tosco producing it in discovery here and that it was not his signature on the letter.  *See* Kann Dep. (Ex. "D") at pp. 177-178.  Mr. Kann also

testified that he did not have any agreement with Tosco to pay $60,000 per Autozone Site as that was significantly above any normal market rate broker fee for such a site. *Id.* at pp. 176-178.

Mr. Kann's testimony was recently corroborated by a forensic computer consultant hired by Defendants to image and analyze the hard drive of Mr. Tosco's work computer. *See* Affidavit of Jesse Lindmar, Senior Computer Forensics Technologist at Sensei Enterprises, Inc. ("Sensei Affidavit"), a forensics and legal technology company, attached hereto as Exhibit "H". An unsigned copy of the August 12, 2004 letter was found on Mr. Tosco's hard drive by Sensei Enterprises. *See* Exs. "H" and "I". Sensei Enterprises analyzed the "meta-data" of the August 12, 2004 letter on Mr. Tosco's hard drive and determined that the alleged $60,000 commission letter was drafted on Mr. Tosco's computer approximately one month after the date on the letter. *See* Sensei Affidavit (Ex. "H"). In addition, a handwriting expert has analyzed the signature on the $60,000 commission letter and has determined that there is a "high probability" that the signature is *not* Mr. Kann's genuine signature. *See* Affidavit of J. Wright Leonard, BCFE CDE, attached hereto as Exhibit "P."[9]

### 2.    Tosco's Perjury

Tosco lied under oath during both days of his deposition regarding the $60,000 commission letter. He claimed that the forged commission letter was sent to him by Allen Kann as an attempt by Baldridge Real Estate to "change the terms of their deal" which was allegedly a prior oral agreement to 10% ownership interest and $60,000 in "reimbursement" per New Jersey Site. *See* Tosco Dep. (Ex. "B") at pp. 20-24, 31-32, 225-237. Tosco also testified that he did not

---

[9] Though defense counsel has requested the original letter and signature from Mr. Tosco's counsel it has not been produced. Ms. Leonard's conclusion is mildly qualified because of her inability to review the original signature.

draft the $60,000 commission letter and that, in fact, he disagreed with its contents because it did not provide him with the alleged 10% ownership interest that he claims in his complaint. *Id.* at pp. 20-24, 228-229.

Tosco's perjury regarding the $60,000 commission letter that he created also makes clear that the "oral agreement" story is a fabrication as well. Perhaps Tosco did not know when he created the fake $60,000 commission letter in September 2004, well before this litigation began, that the New Jersey Real Estate Brokers and Salesmen Act, *N.J.S.A.* 45:15-1 to -29.5 ("NJ Brokers Act"), prohibits real estate brokers who are not licensed in New Jersey, like Tosco[10], from recovering commissions on New Jersey properties. Tosco and/or his lawyers likely learned of the prohibition against Tosco collecting real estate commissions in New Jersey prior to filing this lawsuit. Accordingly, Tosco now claims an alleged "prior oral agreement" to 10% ownership interest and $60,000 in "reimbursements" and tries to distance himself from the $60,000 commission letter that he fabricated. *See* Complaint (Ex. "A") at ¶¶ 61-69; Tosco Dep. (Ex. "B") at pp. 20-24, 31, 32, 225-237.

Tosco's entire testimony regarding the alleged "oral agreement" with Baldridge Real Estate regarding the New Jersey Sites is a sham. Despite the exchange of thousands of pages of documents in discovery, not one document supports Tosco's claim that he was ever promised a 10% ownership interest in the New Jersey Sites or $60,000 in "reimbursement expenses." *See* Tosco Dep. (Ex. "B") at pp. 29-32, 210-215 (admitting there is nothing in writing – no agreement, letter or email – confirming terms of the alleged "oral agreement" regarding the New Jersey Sites). Tosco admitted that, prior to filing the complaint, he never made any demand on

---

[10] Tosco admits that he is not a licensed real estate broker in New Jersey. *See* Tosco Dep. (Ex. "B") at p. 18.

Baldridge Real Estate that it honor his alleged "ownership interest" in the Middletown, Brick,

Bayville or Lacey Sites. *Id.* at pp. 239-250, 257-58, 264-65, 270-71. Moreover, Tosco's

lawyers, Penna, Grabois & Assoc., LLC, the same law firm serving as litigation counsel here,

made no demand regarding any ownership interest in the Middletown, Brick, Bayville or Lacey

Sites when they sought to get Baldridge to pay certain alleged unpaid commissions to Tosco in

2005, approximately 1 ½ years prior to filing this lawsuit on behalf of Tosco. *See*

correspondence from Penna, Grabois & Assoc., LLC, attached hereto as Exhibits "G" and "J".

Clearly, Tosco's lawyers are also well aware that no oral agreement to ownership interests in the

New Jersey Sites ever existed.[11]

**3.      Tosco Admits that the Alleged "Oral Agreement" Regarding the New
          Jersey Sites was Rescinded Well Before the Closings on the New
          Jersey Properties**

Even if this Court does not find that the "oral agreement" allegations are clearly a sham,

the New Jersey Site Claims are still meritless. Tosco admitted that the alleged "oral agreement"

regarding his 10% ownership interest in the New Jersey Sites (allegedly made in the Fall of 2003

with Baldridge Real Estate) was rescinded by Baldridge Real Estate in July/August 2004, well

before any of the New Jersey Sites went to closing. *See* Tosco Dep. (Ex. "B") at pp. 210-215

and 223-232.[12] Tosco claimed that Baldridge Real Estate "changed its mind" regarding the 10%

ownership interest in the New Jersey Sites and instead offered him only $60,000 commission per

site. *Id.* at pp. 234-237. Tosco claimed that this "change in their agreement" was reflected in the

---

[11] Defendants seek sanctions against Tosco's counsel for the filing and continued pursuit of these baseless
claims which significantly increased the costs of this litigation. *See* Section F of this brief, *infra.*

[12] The New Jersey Sites closed on the following dates: Bayville, Brick and Rio Grande on February 11,
2005; Middletown on April 29, 2005; and Lacey on October 5, 2005.

August 12, 2004 commission letter that Tosco himself had created, but that he now claims he "disagreed with" as an inaccurate reflection of his "prior oral agreement" with Baldridge Real Estate. *Id.* at pp. 228-237.  Tosco admitted, however, that he reluctantly accepted this change in agreement and continued working on the New Jersey Sites under the $60,000 commission only deal with the hope that Baldridge Real Estate might change its mind later.  Tosco further admitted that Baldridge Real Estate never changed its mind and never offered him an ownership interest in the New Jersey Sites again. *See* Tosco Dep. (Ex. "B") at pp. 234-237.  Even if Tosco's testimony regarding the oral agreement was believable, it is clear by his own admission that the alleged "oral agreement" was rescinded.

> **4.     Defendants were Forced to Incur Significant Attorneys' Fees and Costs Defending Against Tosco's Baseless Claims and Proving He Fabricated the Commission Letter**

As the direct result of Tosco and his counsel's bad faith pursuit of the frivolous claims regarding the New Jersey Sites, Defendants were forced to incur significant legal fees and costs that should be reimbursed by Tosco and his counsel as an appropriate sanction here.

These additional and significant costs include the following:  (1) the production of all files on the New Jersey Sites by Defendants' New Jersey land use attorney which required a significant privilege review and preparation of an extensive privilege log (this includes time by litigation counsel as well as the law firm of Giordano, Halleran & Ciesla, the land use attorneys on the New Jersey Sites, who had to pull relevant files and search for related emails); (2) expensive motion practice regarding attempts by Tosco to amend his complaint to sue more parties for alleged "unjust enrichment" relating to Tosco's alleged ownership interest in the New Jersey Site Claims; (3) significant discovery disputes and discovery motion practice involving the claims to the New Jersey Sites particularly regarding confidential and proprietary financial

and valuation documents relating to the New Jersey Sites; (4) the research and drafting of those parts of the summary judgment motion relating to the alleged 10% ownership interest and $60,000 in "reimbursements" regarding the New Jersey Sites; and (5) the hiring of a forensic computer consultant and handwriting expert to prove the suspected fabrication of the $60,000 commission letter.

### D.    The Quakertown Site Claim for Commission Must Fail

Tosco claims he is owed $87,500 in commission from Baldridge Real Estate for alleged buyer's broker work on the Quakertown Site in Pennsylvania. The evidence is clear, however, that Brian Wallace of Keller Williams was the sole broker on the Quakertown Site and no commission is owed to Tosco. *See* Deposition Transcript of Brian Wallace ("Wallace Dep.") (Ex. "K") at pp. 15-24; 26-28; 30-31; 33-35; 45-50; *See also* 9/4/03 Buyer's broker commission letter to Brian Wallace from Baldridge Real Estate (Ex. "L"); $150,000 commission check to Keller Williams (Ex. "M"); settlement statement regarding the Quakertown Site (Ex. "N"); Quakertown Site Purchase and Sale Agreements (Ex. "O") at Wallace 000078 and 89; Kann Dep. (Ex. "D") at p. 133. Mr. Wallace is named in the purchase agreement as the sole broker and is on the Quakertown settlement sheets as receiving the only broker's commission. *See* Exs. "N" and "O".

Tosco admits that he had no contact with the sellers on the Quakertown deals. *See* Tosco Dep. (Ex. "B") at pp. 28-29; 142-143. And, except for his self-serving testimony that he did some work such as taking pictures and taking competition surveys around the Quakertown Site, there is no evidence to support his claim to a commission on Quakertown. Tosco admits that the alleged "oral agreement" to $125,000 in commission was never put into writing. *See* Tosco Dep. (Ex. "B") at pp. 144-152; Complaint (Ex. "A") at ¶¶ 48, 61-62. He also testified that, "I didn't

feel limited by the paperwork.  Just because the paperwork said Worcester or Pennsburg and

Lower Providence, I was under the impression that if we could do a store anywhere that Allen

would pay the $250,000."  Tosco Dep. (Ex. "B") at pp. 150, lines 10-15.  An "impression" is

insufficient to establish a contract with Baldridge Real Estate to pay Tosco commission on the

Quakertown Site.  Under the undisputed facts here, Tosco is not entitled to a broker commission

on the Quakertown Deal.

### E.     The Claims Against Gunna Development LLC and Gundaker Commercial Group Based on Principles of "Partnership and Agency" are Unsupported By Any Facts

Tosco claims that Gunna Development, LLC is 'jointly liable" for the New Jersey Site

Claims on the grounds of  "law, partnership and agency."  *See* Complaint (Ex. "A") at Count VI.

Tosco also claims that Gundaker Commercial Group is jointly liable for all claims made against

Gunna Development, LLC based on some vague "partnership" theory set forth in Count XII of

the Complaint.  Both of these counts must fail on the grounds that there are no facts that support

such a claim and that they fail as a matter of law.

It is undisputed that Gunna Development, LLC was not in "partnership or agency" with

Baldridge Real Estate and, therefore, can not be held responsible for its acts under a

"partnership/agency" theory.  *See* Mike Hejna Dep. (Ex. "C") at pp. 17-23, 83-84, 101-105;

Hejna Affidavit (Ex. "E") at ¶¶ 5, 6; and Affidavit of Kenneth R. Baldridge ("Baldridge Aff.")

(Ex. "Q") (confirming that Gunna Development and Baldridge are wholly separate entities with

no common ownership, partnership or agency relationship)[13].

---

[13] The Hejna and Baldridge Affidavits were previously submitted to this Court in opposition to Tosco's motion to amend.

The existence of an arms-length purchase and sale agreement of various properties and entities in the summer of 2005 between Baldridge Real Estate and its principals (sellers) and Gunna Development, LLC (purchaser) as the result of Mr. Kann's change of employment from Baldridge Real Estate to Gundaker Commercial Group does not support a claim of "agency" or "partnership" between Baldridge Real Estate and Gunna Development, LLC.   The Baldridge-Gunna Agreement was an arms-length sale of property interests for valuable consideration on both sides with no evidence it was not at "market value."  *See* 2005 Purchase and Sale Agreement, a redacted version of which was produced in discovery and is attached hereto as Ex. "R" ("Baldridge-Gunna Agreement") and amendments thereto (Exs. "S" and "T");[14] Hejna Dep. (Ex."C") at pp. 17-25, 42-43, 84-85, 101-105; Baldridge Dep. (Ex. "U") at pp. 61-64; Kann Dep. (Ex. "D") at pp. 37-46; Hejna Affidavit (Ex. "E").  Gunna Development and Baldridge Real Estate are wholly independent entities with no common ownership or control.  *See* Hejna Affidavit (Ex. "E"); Baldridge Affidavit (Ex. "Q") at ¶ 4; Hejna Dep. (Ex. "C") at pp. 17-25; 83-85.

There is no evidence that Gunna Development, LLC was an "agent" or "partner" with Baldridge Real Estate with regard to any of the alleged contracts with Tosco – all of which occurred well before the Baldridge-Gunna Purchase Agreement.  *See* Complaint (Ex."A") at ¶¶ 17-23, 48-52, 61-82, 117-125, 131-132; Hejna Affidavit (Ex. "E").  In fact, Michael Hejna, a principal of Gunna Development, LLC, had no knowledge of Tosco or any of his alleged work

---

[14] The Baldridge-Gunna Agreement coincided with Mr. Kann changing employment from Baldridge Real Estate to Gundaker Commercial Group.  Gunna Development, LLC purchased the Defendant LLCs, several  other Baldridge-LLCs that owned various real estate sites being developed by Mr. Kann for Baldridge Real Estate, as well as various purchase contracts on sites that Mr. Kann was working on that had not yet gone to closing.  *See* Baldridge-Gunna Agreement (Ex. "R"); Hejna Dep. (Ex. "C") at pp. 17-25, 42-43, 84-85, 101-105.

for Baldridge Real Estate until this lawsuit was filed. *See* Hejna Dep. (Ex. "C") at p. 78. All of the alleged agreements with Tosco occurred well before the Baldridge-Gunna Agreement occurred in the summer of 2005.

Likewise, Gundaker Commercial Group can not be automatically held responsible for any claims made against Gunna Development, LLC under a "partnership" theory as no evidence supports the piercing of the corporate veil between those two entities. Gundaker Commercial Group and Gunna Development, LLC are affiliated but separate corporate entities. *See* Mike Hejna Dep. (Ex. "C") at pp. 7-17 and Hejna Aff. (Ex. "E") at ¶ 3. Gunna Development, LLC and Gundaker Commercial Group are entitled to summary judgment in their favor on these counts.

## III.   **ARGUMENT**

### A.   **Standard of Review for Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In deciding whether an issue of material fact exists, all inferences must be drawn against the moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). In order to stave off a summary judgment motion, however, the non-moving party may not rest

on the bare allegations contained in his or her pleadings. After the moving party has satisfied its burden of identifying evidence which demonstrates an absence of a genuine issue of material fact, *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), the non-moving party is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corporation v. Catrett,* 477 U.S. 317, 324 (1986); *Lawrence v. O'Neil Buick, Inc.*, 2004 WL 1701041, *1 (E.D.Pa., 2004). Under this standard, Defendants are entitled to judgment in their favor on Counts IV-IX and Count XII.

> **B.     Judgment in Favor of the Defendants Should be Granted on all of the Counts Relating to the New Jersey Site Claims (Counts IV – IX)**

>> **1.     Tosco's Fabrication of the $60,000 Commission Letter and Recent Perjury Make Clear He Is Lying About His Claims to the New Jersey Sites**

Tosco's testimony surrounding the fabricated $60,000 commission letter and the alleged "oral agreement" that was allegedly "changed" by that fake commission letter make clear that there is no valid agreement that Tosco may rely on to assert his claims against the New Jersey Sites. Tosco's creation of the $60,000 commission letter from "Baldridge Real Estate" makes clear that it was he, not Baldridge Real Estate, who came up with the $60,000 figure to be paid per New Jersey Site. *See* Exs. "H" and "I" hereto. Moreover, his testimony regarding the alleged prior oral agreement is also unbelievable because Tosco claims in his Complaint and deposition testimony that Baldridge Real Estate tried to "change" the terms of the prior oral agreement in August 2004, though Tosco himself created the $60,000 commission letter dated August 12, 2004. *See* Tosco Dep. (Ex. "B") at pp. 20-24, 225-231.

## 2.   Tosco Admitted that the Alleged Oral Agreement Was Rescinded Well Before Closing on the New Jersey Sites

Tosco has admitted that the alleged oral agreement to 10% ownership in the New Jersey

Sites and $60,000 in "reimbursements" per site was rescinded by Baldridge Real Estate in

July/August 2004 -- well before the closings on the New Jersey Sites -- and that no agreement

for ownership interest existed at the time of closing on the Lacey, Middletown, Bayville and

Brick Sites. *See* Tosco Dep. (Ex. "B") at pp. 20-24, 223-237, 249-250.[15]  Tosco also admitted in

his deposition that prior to filing the Complaint he made no demand on Baldridge Real Estate

asserting his alleged ownership interest in the Middletown Site (Ex. "B" at pp. 239-250), the

Bayville Site (*Id.* at 257-58), the Brick Site (*Id.* at 264-65) and the Lacey Site (*Id.* at 270-71).

Tosco's attorneys, who are also litigation counsel here, also never reference any alleged

"ownership interest" in the New Jersey Sites in correspondence to Baldridge Real Estate well

before the Complaint was filed seeking alleged unpaid commissions on the New Jersey Sites.

*See* Exs. "G" and "J".

It is well settled that parties to a contract, even an oral contract, may rescind that

agreement by making a new contract.  Mutual assent to abandon the contract may be inferred

from attending circumstances and the conduct of the parties. *Muchow v. Schaffner*, 119 A.2d

568 (Pa. Super. 1956).  The agreement to modify need not even be expressed in words; it may be

inferred from acts and declarations of the parties inconsistent with the original contract. *Weldon

& Kelly Co. v. Pavia Co.*, 46 A.2d 466 (Pa. 1946); *Muchow v. Schaffne*r, 119 A.2d 568, 570 (Pa.

Super. 1956).  Here, according to Tosco, the rescission by Baldridge Real Estate was expressly

---

[15] Tosco testified that he obtained a written agreement to an ownership interest in the Rio Grande Site because his alleged oral agreement was already rescinded. *See* Rio Grande Contract (Ex. "V"); Tosco Dep. (Ex. "B") at pp. 288-289.

made. *See* Tosco Dep. (Ex. "B" ) at pp. 233-237.  Tosco even admitted that he continued to

work under the new terms with the hope that Baldridge Real Estate would "change its mind."

*Id.*  Tosco also admitted that Baldridge never did "change its mind."  *Id.*  Even if Tosco's

testimony regarding a prior oral agreement is not found to be an outright lie, his admission that

such agreement changed in August 2004, and that he continued to work under those changed

terms, is fatal to his claim.  S*ee, e.g., Crown, Cork & Seal Co. v. Employers Ins. of Wausau,* Civ.

A. No. 99-4904, 2001 WL 9860, at *3-4 (E.D.Pa. Jan.4, 2001) (noting that any contract may be

modified by negotiation and mutual assent including conduct implying assent to a change in

terms); *See also Toner v. Miller*, 2004 WL 253530, *5 (E.D.Pa. 2004); *Empire Properties, Inc.*

*v. Equireal, Inc.,* 449 Pa. Super. 302-03 (Pa.Super.1996) (consideration implied from mutual

assent of parties to contract modification).

> **3.      Even under the facts as alleged by Tosco, his claims to the New Jersey
> Sites Fail as a Matter of Law**

### a. Tosco's Claims for Unpaid Commissions are Prohibited by Law

An unlicensed broker may not receive commissions for transactions involving real estate

in New Jersey.  Indeed, it is well settled that recovery is precluded for a commission, fee, or

other consideration by anyone who, without a license, acts as a broker or a "finder" in a

transaction involving real estate in New Jersey. *See Baron & Company, Inc. v. the Bank of New*

*Jersey*, 504 F.Supp. 1199, 1204-1210 (D.C.N.J. 1981).

Although Tosco claims that he is seeking a flat fee "reimbursement" of $60,000.00 per

New Jersey Site and not a commission, the definition of "broker" does not distinguish between a

fee, commission or other valuable consideration.  Specifically, the definition of a "Broker" as

defined by the New Jersey Real Estate Brokers and Salesmen Act, *N.J.S.A.* 45:15-1 to -29.5 ("

NJ Brokers Act"), is "a person, firm or corporation who, for a <u>fee, commission or other valuable</u>

consideration, or by reason of a promise or reasonable expectation thereof, lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of real estate or an interest therein" N.J.S.A. 45-15:34 (emphasis added).

The courts have made it clear that it is illegal to engage in any unlicensed brokerage activity in New Jersey, regardless of whether the person is unscrupulous, dishonest, or merely duped into acting as a broker. *Id. See also*, *N.J.S.A.* 45:15-1 to -29.5. It does not matter who the unlicensed broker sues or what legal theory of recovery he or she asserts; the focus of the New Jersey Broker's Act is upon the actions performed. *Id.* With regard to *N.J.S.A.* 45:15-3, "the public policy of this State is <u>not</u> to lend unlicensed brokers the aid of the courts to enforce their brokerage agreements." *Palkoski v. Garcia,* 32 N.J. Super. 343, 347 (App.Div.1954) (quoting *Solomon v. Goldberg,* 11 N.J. Super. 69, 78 A.2d 118 (App.Div.1950)), aff'd, 19 N.J. 175, 115 A.2d 539 (1955). "[T]he legislative objective in closing the courts to the unlicensed broker was to establish a policy so strong that neither the contract nor the unlawful efforts made in its pursuit could provide [a] basis of pecuniary benefit to him ...". *Tanenbaum v. Sylvan Builders, Inc.,* 29 N.J. 63, 71-72; *Atl. Commer. Group v. Dunham, supra,* 303 N.J. Super. 128, 129-130 (App.Div.1997). The mechanism through which New Jersey's legislature sought to accomplish this end was to enact a licensing act and regulatory scheme with a broad prohibition on unlicensed persons engaging in the business of a real estate broker. This prohibition applies broadly to anyone who solicits or locates prospective buyers or purchasers. *See Baron,* 504 F.Supp. at 1205-06.

To the extent that Tosco did any work for Baldridge Real Estate in New Jersey, it was clearly as a buyer's broker for commissions. In fact, that was how Tosco himself described his alleged work in his fabricated $60,000 commission letter and how his lawyers described his

work prior to filing this lawsuit. *See* Exs. "F", "G", "I" and "J " (proposed Agreement dated

July 2005 from Tosco's lawyers describing Tosco's work as "valuable broker services" with no

mention of a "co-venture/partnership agreement" or claim to a 10% interest in the Middletown,

Brick, Lacey or Bayville Sites). *See also* Tosco Dep. (Ex. "B") at pp. 293-298, 318-320.

### 4. Tosco's Alleged Oral Agreement for an Ownership Interest in the New Jersey Sites Violates the Statute of Frauds

Under either Pennsylvania or New Jersey law,[16] Tosco's self-serving allegations of an

"oral agreement" regarding an ownership interest in the four New Jersey Sites, with no

supporting evidence establishing the existence, terms or parties to that agreement, is insufficient

to overcome the Statute of Frauds. *See Mill Run Assoc. v. Locke Prop. Co., Inc.* 2003 WL

22232620 at *4 (E.D. Pa. 2003)(Statute of Frauds provides that no interest in land may be

assigned, granted or surrendered unless in writing signed by parties and bars oral agreements for

sale of land and remedy of specific performance); *Middleton v. Realen Homes, Inc.*, 24

F.Supp.2d 430 (E.D. Pa. 1998) (Statute of Frauds provides that agreements for sale of real estate

not enforced unless in writing and signed by seller); *Long v. Brown,* 582 A.2d 359 (Pa. Super.

1990) (purported transfer of ownership in real property not enforceable unless evidenced in

writing and signed by the parties granting the interest setting forth essential terms of contract);

*Haines v. Minnock Construction Co.*, 433 A.2d 30, 33 (Pa. Super. 1981) (purpose of statute of

frauds "is to prevent the enforcement of unfounded fraudulent claims by requiring that contracts

pertaining to interests in real estate be supported by written evidence"). *See also Morton v. 4*

*Orchard Land Trust,* 849 A.2d 164, 168-69 (N.J. 2004) (upholding summary judgment against

---

[16] It is not clear under a choice-of-law analysis whether New Jersey (site of properties at issue) or Pennsylvania (site of alleged contract/residence of Plaintiff) would apply here. As the claims here fail under either state's statute of frauds, a conclusion as to the choice-of-law is not necessary.

prospective purchaser seeking specific performance of contract of sale because no signed written agreement and no "clear and convincing" evidence of an oral contract, which requires a "high standard of proof" establishing an intent by parties to be bound by the essential terms of the agreement); *Corigliano v. Fernicola*, 2006 WL 1042374, *6-7 (N.J. Super. A.D. 2006) (alleged contract constituting an agreement to transfer an interest in land is governed by Statute of Frauds, which requires agreement to be clear and in writing or proven by "clear and convincing" evidence of an oral agreement that is "so clear, direct and weighty and convincing as to enable a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue").[17] Here, Tosco admits that there are no documents that support his claim that an oral agreement exists which provided him with an ownership interest in the four New Jersey properties. *See* Tosco Dep. (Ex. "B") at pp. 29-32, 210-215. That fact, combined with his fabrication of the commission letter and perjury regarding that letter, cannot overcome the statute of frauds.

### C. Counts III and IV Regarding the Quakertown Site Should be Dismissed

Tosco's claim to $87,500 in commission on the Quakertown Site also fails. Tosco admits that he does not have a commission agreement in writing for the Quakertown Site. *See* Complaint (Ex. "A") at ¶¶ 48, 61-62; Tosco Dep. (Ex. "B") at pp. 144-152. Baldridge Real Estate did, however, have a signed commission agreement with Brian Wallace of Keller Williams and paid Keller Williams its full commission at settlement. *See* Exs. "L" and "M". Tosco also does not appear on the purchase contracts or settlement sheets. *See* Ex. "N" and "O".

---

[17] Based on Tosco's own admission that the alleged oral agreement pertaining to a 10% ownership interest was rescinded and his admission that no future oral agreement was ever made with Baldridge Real Estate for an ownership interest in the New Jersey Sites, Tosco cannot demonstrate "clear and convincing evidence" that an oral agreement exists as required by the statute of frauds.

Allen Kann and Brian Wallace, the broker on the Quakertown Site, both testified that Tosco was
not the broker on that deal and not entitled to a commission on that deal. *See* Kann Dep. (Ex.
"D") at p. 133 and Wallace Dep. (Ex. "K") at pp. 15-24; 26-28; 30-31; 33-35; 45-50.

Pennsylvania's Real Estate Licensing and Registration Act ("RELRA") "establishes
specific standards of conduct and licensing which pertain to all persons engaged in the sale or
transfer of real property within this Commonwealth." *Meyer v. Gwynedd Development Group,*
756 A.2d 67, 69 (Pa.Super.Ct.2000). *See also* 63 P.S. § 455.301. "A principal purpose of the
Act is to protect buyers and sellers of real estate, the most expensive item many persons ever
buy or sell, from abuse by persons engaged in the business." *Meyer,* 756 A.2d at 69 (citing
*Kalins v. Commonwealth, State Real Estate Comm'n.,* 92 Pa.Commw. 569, 577, 500 A.2d 200,
203 (1985)).

Specifically, the RELRA states, in pertinent part, that:

> (1) A licensee may not perform a service for a consumer of real
> estate services for a fee, commission or other valuable
> consideration paid by or on behalf of the consumer unless the
> nature of the service and the fee to be charged are set forth in a
> written agreement between the broker and the consumer that is
> signed by the consumer. This paragraph shall not prohibit a
> licensee from performing services before such an agreement is
> signed, but the licensee is not entitled to recover a fee, commission
> or other valuable consideration in the absence of such a signed
> agreement.
>
> (2) Notwithstanding paragraph (1), an open listing agreement or a
> nonexclusive agreement for a licensee to act as a buyer/tenant
> agent may be oral if the seller or buyer is provided with a written
> memorandum stating the terms of the agreement.
>
> (3) Nothing in this subsection shall require a transaction licensee or
> subagent who is cooperating with the listing broker to obtain a
> written agreement from the seller.
>
> (4) A subagent or transaction licensee who is cooperating with the
> listing broker for a fee paid by the listing broker or seller shall

21

> provide the buyer, prior to performing any services, with a <u>written disclosure statement</u> signed by the buyer, describing the nature of the services to be performed by the subagent or transaction licensee....

63 P.S. § 455.606a(b)(emphasis added).  The Act further provides that an agreement between a broker and a principal, or any agreement between a broker and a consumer whereby the consumer is or may be required to pay a fee, commission or other valuable consideration, **must be in writing** and shall contain specific information. 63 P.S. § 455.608a (emphasis added.)  The explicit language of these provisions demonstrates that the Pennsylvania legislature requires that broker agreements must be in writing, or at least include a written memorandum stating the agreement's terms. *Roddy, Inc. v. Thackray Crane Rental Inc.*, 2001 WL 1807953, *3 (Pa.Com.Pl. 2001).  As Tosco admits in the Complaint and in his deposition, no written agreement or memorandum exists.  That, in and of itself, is fatal to the claim for commission on the Quakertown Site.

### D.     The Unjust Enrichment Claims Against the Defendant LLCs Should Be Dismissed

In the first instance, the unjust enrichment claims against the Defendant LLCs must fail for the same reasons set forth in Section C above.  As there is no legitimacy to the New Jersey Site Claims, this derivative claim against the Defendant LLCs must also fail.

In addition, Tosco's attempt to assert unjust enrichment claims against the Defendant LLCs here should be denied as it is undisputed that Tosco's claims, if any, are grounded in various oral and written contractual agreements with Baldridge Real Estate.  It is well established that unjust enrichment claims are inapplicable where a written or express agreement exists. *See Bouriez v. Carnegie Mellon University*, 2005 WL 3006831 (W.D.Pa. 2005); *Birchwood Lakes Community Ass'n, Inc. v. Com,* 442 A.2d 304 (Pa.Super.1982)(enrichment claims are not

applicable where relationship among parties is an <u>express</u> agreement); *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.* 2007 WL 2702808, 4 (Pa. Super. 2007)(unjust enrichment arises only when no written or express contract); *Lackner v. Glosser,* 892 A.2d 21, 34 (Pa.Super.2006) (doctrine of quasi-contract, or unjust enrichment, is inapplicable where a written or express contract exists) (citation omitted).  Here, Tosco's claims are based on alleged written and oral contracts with Baldridge Real Estate and, thus, the unjust enrichment claims against the Defendant LLCs fail as a matter of law.

> **E.     Tosco's Claims Against Gunna Development (Count VI) and Gundaker Commercial Group (Count XII) Based on "Law, Agency and/or Partnership" Should be Granted in Favor of Defendants**

The relationship between principal and agent is defined as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *General Building Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 392, 102 S.Ct. 3141, 3151, 73 L.Ed.2d 835 (1982) (quoting Restatement § 1(1)). *Kemether v. Pennsylvania Interscholastic Athletic Ass'n, Inc.,* 15 F.Supp.2d 740, *747 (E.D.Pa.,1998).  In an agency relationship, the master "not only controls the results of the work but has the right to direct the way in which it shall be done." *Jones v. Century Oil, U.S.A.,* 957 F.2d 84, 86 (3d Cir.1992) (quoting *Feller v. New Amsterdam Cas. Co.,* 363 Pa. 483, 486, 70 A.2d 299, 300 (1950)).  The burden of showing an agency relationship is on the party asserting it. *Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co.,* 412 Pa. Super. 140, 146, 602 A.2d 1348, 1351 (1992); *Mahon v. City of Bethlehem*, 898 F.Supp. 310, *312 (E.D.Pa.,1995).

Here, there is no evidence that shows a "partnership" or "agency" relationship existed between Baldridge Real Estate and Gunna Development, LLC. *See, supra,* Section E of this

23

Brief.  To the contrary, the only "relationship" between Baldridge Real Estate and Gunna

Development, LLC was an arms-length Purchase and Sale Agreement as a result of Allen Kann

changing employment.  There is no evidence that one entity was an "agent" or "partner" to

another or that Gunna Development, LLC even knew who Tosco was prior to filing this lawsuit.

Moreover, Gundaker Commercial Group can not be held "jointly liable" for any claims

against Gunna Development, LLC under a partnership theory as alleged in Count XII.

Gundaker Commercial Group and Gunna Development, LLC are separate corporate entities.

*See* Hejna Dep. (Ex. "C") at pp. 7-17; Hejna Aff. (Ex. "E") at ¶ 3.  Liability can not be imposed

on a parent corporation merely because they may have some shared directors or employees.  *See*

*Pearson. v. Component Technology Corp.*, 247 F.3d 471, 484 (3d Cir. 2001).  Mere ownership

of a subsidiary does not justify the imposition of liability on the parent.  *Id.*  Tosco's vague

allegations against Gundaker Commercial Group in Count XII simply have no basis in fact or

law and judgment in favor of Gundaker Commercial Group should be granted on Count XII.

**F.**     **Tosco's Counsel Should Be Sanctioned for the Pursuit of the New Jersey Site Claims as they are Clearly Baseless and Vexatiously Multiplied the Proceedings and Significantly Increased Defense Costs in Violation of 28 U.S.C. § 1927**

Based on the lack of evidentiary support and legal foundation of the New Jersey Site

Claims, in conjunction with Tosco's fraudulent creation of a commission letter and subsequent

perjury regarding that letter, it is clear that the New Jersey Site Claims were and are completely

meritless.  Tosco and his counsel's pursuit of these baseless claims has significantly increased

the cost of this lawsuit as Defendants have been required to expend needless time and expense

on discovery and motion practice related to these claims which involved five separate real estate

deals.  *See* pp. 10-11 of this brief, *supra*.  In order to deter this type of misconduct by attorneys,

28 U.S.C. § 1927 permits the Court to sanction an attorney when they unreasonably and vexatiously multiply case proceedings.[18] *See* 28 U.S.C. § 1927.

"In determining whether imposition of the sanctions contemplated by § 1927 is called for, the question to be addressed is whether the attorney sought to be sanctioned is fairly chargeable with actions taken which are tantamount to willful bad faith." *Costello v. Daddario,* 710 F.Supp. 1035, 1037 (1989)(citing *Baker Indus. v. Cerberus Ltd.,* 764 F.2d 204, 209 (3d Cir.1985)). The Court of Appeals for the Third Circuit has stated that the "intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay" may be indicative of bad faith. *Ford v. Temple Hospital,* 790 F.2d 342, 347 (3d Cir.1986). When a claim is advocated despite the fact that it is patently frivolous or where a litigant continues to pursue a claim in the face of an irrebuttable defense, bad faith can be implied. *See Hicks v. Arthur,* 891 F.Supp. 213 (E.D.Pa.1995)(imposing § 1927 sanctions because claims plainly barred by federal and state law); *Boykin,* 905 F.Supp. at 1335 (finding bad faith when attorney pursued claim after being informed that it was time barred). Additionally, "even if a lawsuit was initially filed in good faith, sanctions may be imposed on an attorney for all costs and fees incurred after the continuation of the lawsuit which is deemed to be in bad faith." *Id.* at 1446-47 (*citing Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750 (7th Cir.1988); *Matthews v. Freedman,* 128 F.R.D. 194, 207 (E.D.Pa.1989)).

Counsel's initial pursuit of the New Jersey Site Claims without any evidence to support the alleged oral agreement to $60,000 in partnership "reimbursements" per site (with full

---

[18] Under § 1927, sanctions are directed at the offending attorney and may not be imposed upon the client. *Boykin v. Bloomsburg University of Pennsylvania,* 905 F.Supp. 1335 (M.D.Pa.1995)(citing *Williams v. Giant Eagle Markets, Inc.,* 883 F.2d 1184, 1190 (3d Cir.1989)).

knowledge that both they and their client referred to the $60,000 per site as a "commission" at all times prior to the filing of the Complaint) or Tosco's alleged 10% ownership interest in the New Jersey Sites (never mentioned by counsel or Tosco in any correspondence to Baldridge prior to filing the Complaint) is sanctionable.  Moreover, Penna Grabois' continued pursuit of the New Jersey Site Claims even after knowledge of Tosco's fabrication of the $60,000 commission letter and perjury regarding that letter, clearly places counsel in the ambit of  28 U.S.C. § 1927 sanctions.  Tosco's counsel should be sanctioned in the form of payment of the attorneys' fees and costs that Defendants were required to expend to defend against the meritless New Jersey Site claims.

## IV.    CONCLUSION

For the above reasons, Defendants hereby request this Honorable Court grant their motion for summary judgment and motion for sanctions.

Respectfully submitted,

**THORP REED & ARMSTRONG, LLP**

By: LCE3311
　　Ira B. Silverstein, Esquire
　　Lisa Carney Eldridge, Esquire
　　Lisa M. Swan, Esquire
　　One Commerce Square
　　2005 Market Street
　　Suite 1910
　　Philadelphia, PA  19103-7041
　　(215) 640-8500

　　Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2007, the foregoing **Defendants' Motion for Summary Judgment and for Sanctions Pursuant to 28 U.S.C. 1927 and brief and exhibits in support thereof** was served on the following via U. S. Mail, postage prepaid::

        Marshall L. Grabois, Esquire
        PENNA, GRABOIS & ASSOC., LLC
        166 East Butler Avenue
        Ambler, PA  19002

                      LCE3311_____
                      LISA CARNEY ELDRIDGE