## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY TOSCO | : | |
| and | : | |
| TOSCO ELITE, LLC | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | NO.  07-324 |
| v. | : | |
| | : | |
| BALDRIDGE REAL ESTATE, INC.; | : | |
| GUNNA DEVELOPMENT, LLC; | : | |
| GUNDAKER COMMERCIAL GROUP; | : | |
| BALDRIDGE-MIDDLETOWN, LLC aka | : | |
| GUNNA-MIDDLETOWN, LLC; | : | |
| BALDRIDGE-BRICK, LLC aka | : | |
| GUNNA-BRICK, LLC; | : | |
| BALDRIDGE-BAYVILLE, LLC aka | : | |
| GUNNA-BAYVILLE, LLC; and | : | |
| BALDRIDGE-RIO GRANDE, LLC aka | : | |
| GUNNA-RIO GRANDE, LLC. | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                July 10, 2008

Presently before the Court are Plaintiffs' Motion for Leave to File an Amended

Complaint, (Docket No. 15), Defendants' Response thereto (Docket No. 21), and Plaintiffs'

Rebuttal (Docket No. 23); as well Defendants' Motion for Summary Judgment and Motion for

Sanctions (Docket No. 24), Plaintiffs' Response thereto (Docket No. 26), Defendants' Response

in Opposition (Docket No. 28), and Plaintiffs' Supplemental Memorandum (Docket No. 29).  For

the reasons stated below, Plaintiffs' Motion for Leave to File an Amended Complaint is granted,

and Defendants' Motion for Summary Judgment is granted in part and denied in part.

## I. BACKGROUND

Given the parties' familiarity with the facts, the Court will state only those facts

relevant to the pending motions.  This action stems from four alleged contracts between Plaintiffs

Anthony Tosco and Tosco Elite, LLC, and Defendant Baldridge Real Estate, Inc. ("Baldridge

R.E."), involving various real estate sites in Pennsylvania and New Jersey.

The first of these contracts was a buyer's broker commission agreement, where

Plaintiffs allegedly acted as a broker in obtaining a parcel of land for Defendants in Pennsburg,

Pennsylvania (hereafter referred to as the "Pennsburg Site"), entitling Plaintiffs to a $250,000

commission.  (Pls.' Mem Supp. Mot. Leave File Am. Compl. 2.)

This contract was originally verbal but was later confirmed in a writing signed by Defendant

Baldridge R.E. in 2003.  (Id.)

Plaintiffs allege that the second contract was a buyer's broker commission

agreement, where Plaintiffs acted as a broker and consultant for Defendants and were to be paid

$125,000 upon settlement of parcels located in Quakertown, Pennsylvania (hereafter referred to

as the "Quakertown Site").  (Id.)   This alleged contract was a verbal agreement between

Plaintiffs and Defendant Baldridge R.E.  (Id.)  Plaintiffs claim to have been paid $37,500 of the

amount owed, but claim that Defendants refuse to pay the remaining $87,500.  (Compl. ¶ 57.)

The third alleged contract was a verbal agreement between Plaintiffs and

Defendant Baldridge R.E. where Plaintiff was to receive a ten per cent equity interest and

$60,000 per site compensation to be paid upon settlement of five parcels of land located in New

Jersey (hereafter referred to as the "New Jersey Sites").[1]  (<u>Id.</u>)  This agreement was allegedly rescinded by Defendant Baldridge R.E., and replaced by a subsequent writing that did not reference a shared equity interest yet did evidence an agreement for $60,000 per site compensation.  (<u>Id.</u>; Defs.'Mem. Supp. Mot. Summ. J. 9.)  The parties, however, dispute the authenticity of this writing.

The fourth contract was a written agreement between Plaintiffs and Defendant Baldridge R.E. providing for Plaintiffs to contribute a $150,000 deposit on behalf of Defendant Baldridge R.E. for the purchase of two of the New Jersey sites in exchange for a 20% ownership interest in the Rio Grande Site and reimbursement of the $150,000 deposit.  (Pls.' Mem. Supp. Mot. Leave File Am. Compl. 2.)

As stated, it is these four alleged contracts that gave rise to this action.  Defendant Baldridge R.E. was the purchaser under all of the purchase contracts of the subject real estate sites.  (<u>Id.</u> at 3; Compl. Exs. 2-12, 14-15; Defs.' Mem. Supp. Mot. Summ. J. Ex. O.)  However, in accordance with Defendant Baldridge R.E.'s normal course of business, their interests in the New Jersey Sites were transferred at closing to limited liability companies created for each site, and these LLCs were named after the site to which they corresponded.  (Defs.' Resp. Pls.' Mot. Leave File Am. Compl. 4 n.5.)  In other words, the deed to the Bayville Site became titled in the name of Baldridge-Bayville, LLC; the deed to the Brick Site became titled in the name of Baldridge-Brick, LLC; the deed to the Middletown Site became titled in the name of Baldridge-

---

[1]The five individual properties constituting the New Jersey Sites are hereafter referred to as the "Lacey Site", "Brick Site", "Middletown Site", "Bayville Site", and "Rio Grande Site." The original Complaint also included claims pertaining to a sixth New Jersey site referred to as the "Mantua Site," but Plaintiffs have indicated in their proposed Amended Complaint that they no longer wish to pursue that claim.  (<u>See</u> Pls.' Mem. Supp. Mot. Leave File Am. Compl. 10.)

Middletown, LLC.; and the deed to the Rio Grande Site became titled in the name of Baldridge-Rio Grande, LLC.  These LLCs are named as Defendants in the present suit, and were owned 80% by Kenneth R. Baldridge and 20% by C. Allen Kann prior to the sale of the LLCs to Defendant Gunna Development in August 2005.  (Id.)  Kenneth R. Baldridge was the principal owner and chief officer of Defendant Baldridge R.E., and C. Allen Kann was executive Vice-President of Baldridge R.E. prior to being employed by Gunna.  (Defs.' Resp. Pls.' Mot. Leave File Am. Compl. 5.)  After the sale to Gunna Development, the name of each LLC was changed, with the name "Gunna" replacing "Baldridge."  (Pls.'Mem Supp. Mot. Leave File Am. Compl. 4.)

Similarly, Defendant Baldridge R.E. purchased the Lacey Site and the Pennsburg Site, but the deeds were titled in the name of Defendant Gunna Development, LLC upon closing. (Pls.' Mem Supp. Mot. Leave File Am. Compl. 3.)  Gunna's parent company, Gundaker Commercial Group ("Gundaker"), is also named as a Defendant in this action.  (Defs.' Resp. Pls.' Mot. Leave File Am. Compl. 4 n.6.)

The present suit was initiated as a result of Plaintiffs' claimed entitlement to certain commissions and ownership interests based on the verbal and written agreements described above.  Plaintiffs now seek to amend the Complaint to make typographical additions/corrections; include three new Defendants:  Mr. Baldridge and Mr. Kann individually, and the Kenneth R. Baldridge Revocable Trust ("Baldridge Trust"); and expand the unjust enrichment claims to include these new Defendants and Defendant Gunna Development, LLC. (Id.)  Defendants do not contest the typographical changes, but do challenge the adding of new Defendants and claims.

4

Defendants have also moved for Summary Judgment with respect to claims relating to the New Jersey Sites (Counts V-IX), the Quakertown Site (Count IV), the claims against Gunna Development and Gundaker Commercial Group (based on principles of partnership and agency) (Count VI and Count XII), and all claims of unjust enrichment. Defendants also seek sanctions for Plaintiffs' alleged pursuit of meritless claims.

## II.  STANDARD

### A.  Leave to Amend Complaint

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a).  "The decision to grant or deny a motion for leave to amend is within the sound discretion of the district court."  Freedom Int'l Trucks, Inc. of NJ v. Eagle Enters., Inc., 182 F.R.D. 172, 174 (E.D.Pa. 1998) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  "[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  Foman v. Davis, 371 U.S. 178 (1962).  "Factors that militate against granting leave to amend are 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. . . ."  Freedom Int'l., 182 F.R.D. at 174 (quoting Foman, 371 U.S. at 182.).

**B.  Summary Judgment**

A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Because a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion.  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The ultimate question in determining whether a motion for summary judgment should be granted is "whether reasonable minds may differ as to the verdict." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

After the moving party satisfies its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 256-57.  Rule 56 of the Federal Rules of Civil Procedure requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986).  "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has

failed to make a sufficient showing on an essential element of her case with respect to which she

has the burden of proof." Id. at 323.

## III. DISCUSSION

### A. Leave to Amend Complaint

As stated, Defendants do not contest Plaintiffs' correction of typographical errors

(Defs.' Mem. Opposition Pls.' Mot. Leave File Am. Compl. 1 n.1.)   With respect to Plaintiffs'

proposed additions, in light of the standard for granting leave to amend highlighted above, there

is no basis for denying Plaintiffs' motion.  The Court exercises its discretion and allows the

Plaintiffs' claims of unjust enrichment as an alternate theory against Gunna, Mr. Baldridge, the

Baldridge Trust, and Mr. Kann, despite Defendants' contention that their "incidental[] benefit[] .

. . is too tenuous and insufficient to establish unjust enrichment." (Id. at 9.)  Plaintiffs have made

sufficient allegations of the newly named Defendants benefitting despite not being parties to the

alleged written and oral contracts.

The Court is also unpersuaded by Defendants' contentions that the Court should

deny leave to amend based on lack of personal jurisdiction or insufficient facts to pierce the

corporate veil.  Plaintiffs have alleged sufficient facts to support a finding that Mr. Kann, Mr.

Baldridge, and the Baldridge Trust availed themselves and benefitted individually to establish

personal jurisdiction.   (Pls.' Rebuttal Mem. Supp. Mot. Leave File Am. Compl. 19-34.)

Likewise, Plaintiffs have gone beyond mere conclusory allegations and provided evidence of

Defendants having abused their corporate identity by acting as a shell corporation to withstand

dismissal at this time.  Accordingly, Plaintiffs' Motion for Leave to File an Amended Complaint is granted.

### B.  Summary Judgment

The Court finds summary judgment to be inappropriate in light of the standard set forth above with the exception of one claim.  Count IV of the Complaint refers to Plaintiffs' verbal agreement with Defendant Baldridge R.E. where Plaintiffs were to act as Buyer's Broker for its acquisition of the Quakertown Site.  (Compl. ¶¶ 46-59.)  Plaintiffs claim that Defendants paid $37,500 of the commission owed, but refused to pay the remaining $87,500[2] plus costs and interests.  (Id.)

In its motion for summary judgment, Defendants argue that there is no writing evidencing Plaintiffs' alleged broker commission agreement with respect to the Quakertown Site, and therefore Plaintiffs are not entitled to a commission under Pennsylvania law.  (Defs.' Mem. Supp. Mot. Summ. J. 20-22.)  The Pennsylvania Real Estate Licensing and Registration Act ("RELRA") "establishes specific standards of conduct and licensing which pertain to all persons engaged in the sale or transfer of real property within this Commonwealth."  Meyer v. Gwynedd Dev. Group, Inc., 756 A.2d 67, 69 (Pa. Super. Ct. 2000).  "A principal purpose of the [RELPA] is to protect buyers and sellers of real estate, the most expensive item many persons ever buy or sell, from abuse by persons engaged in the business."  Id. (citing Kalins v. Commonwealth, State

---

[2] Plaintiffs' initial compensation with respect to the Quakertown Site was to be $250,000.00, but Defendant Baldridge R.E. later informed Plaintiffs that they would sharing the commission with another broker hired to act on Defendant Baldridge R.E.'s behalf.  (Compl. ¶ 49.)

<u>Real Estate Comm'n</u>, 500 A.2d 200, 203 (Pa. Commw. 1985)).  Specifically, the RELRA states

in pertinent part that:

> (1) A licensee may not perform a service for a consumer of real estate services for a fee, commission or other valuable consideration paid by or on behalf of the consumer unless the nature of the service and the fee to be charged are set forth in a written agreement between the broker and the consumer that is signed by the consumer.  This paragraph shall not prohibit a licensee from performing services before such an agreement is signed, but the licensee is not entitled to recover a fee, commission or other valuable consideration in the absence of such a signed agreement.

> (2) Notwithstanding paragraph (1), an open listing agreement or a nonexclusive agreement for a licensee to act as a buyer/tenant agent may be oral if the seller or buyer is provided with a written memorandum stating the terms of the agreement.

> (3) Nothing in this subsection shall require a transaction licensee or subagent who is cooperating with the listing broker to obtain a written agreement from the seller.

> (4) A subagent or transaction licensee who is cooperating with the listing broker for a fee paid by the listing broker or seller shall provide the buyer, prior to performing any services, with a written disclosure statement signed by the buyer, describing the nature of the services to be performed by the subagent or transaction licensee. . . .

63 P.S. § 455.606a(b).

        Plaintiffs do not dispute that the RELRA requires real estate brokerage

commissions to be either in writing or, if oral, there must be a written memorandum with its

terms.  (Pls.' Mem. Resp. Defs.' Mot. Summ. J. 41.)  Furthermore, Plaintiffs do not suggest that

there is a writing here to satisfy the statute, but rather concede that the agreement with respect to

the Quakertown Site was verbal.  (Compl. ¶¶ 48-49; Defs.' Reply Further Supp. Mot. Summ. J.

12, Ex: B, Tosco Dep. dated October 3, 2007 147:11-147:22.)  Plaintiffs argue, however, that the

RELRA is inapplicable because the services provided were more closely related to that of a "business consultant" rather than as a "broker."  (Pls.' Mem. Resp. Defs.' Mot. Summ. J. 41.)

Plaintiffs cite two Pennsylvania cases to support their contention, both of which illustrate the right of a non-licensed person to recover payment for services notwithstanding the RELRA.  In Fisch's Parking, Inc. v. Independence Hall Parking, Inc., 638 A.2d 217 (Pa. Super. 1994), the Pennsylvania Superior Court upheld the trial court's finding that a consultant, despite not being a licensed real estate broker, was entitled to his agreed upon commission after he assisted in accomplishing the sale of property and the seller refused payment based on the RELRA's licensing requirements.  Id. at 219.  In Gruber v. Owens-Illinois Inc., 899 F.2d 1366 (3d Cir. 1990), the Third Circuit found that the RELRA did not bar an unlicensed broker from his commission when the underlying sale consisted of corporate property of which a portion of the assets contained real estate.

The Court, however, is unpersuaded by Plaintiffs' argument and finds the RELRA to be applicable and fatal to Count IV of Plaintiffs' Complaint.  The cases cited by Plaintiffs are distinguishable from the facts here.  As Defendants argue, both Fisch's Parking and Gruber involved written agreements and unlicensed brokers.  (Defs.' Reply Further Supp. Mot. Summ. J. 12.)  Here, Plaintiff Anthony Tosco is a licensed Pennsylvania broker and there is no writing to evidence the agreement pertaining to the Quakertown Site.   The language of the RELRA is clear that in the absence of a writing, a broker is not entitled to a fee or commission.

Furthermore, the Court is unpersuaded by Plaintiffs' contention that the services provided were really those of a business consultant and not a broker.  Not only do Plaintiffs raise

this argument for the first time in the face of summary judgment, but Plaintiffs provide no evidence to support their contention.  Furthermore, the language of the RELRA specifically states that "[a] licensee may not perform a <u>service</u> for a consumer of real estate services for a fee, commission or other valuable consideration . . . unless the nature of the <u>service</u> and the fee to be charged are set forth in a written agreement . . . ."  63 P.S. § 455.606a(b)(1) (emphasis added).  Plaintiff Anthony Tosco's classification as a "business consultant" rather than a "broker" does not hide the fact that he was a licensee providing services to Defendants in the context of Defendants' purchase of real estate.  Therefore, the RELRA is indeed applicable and the absence of a writing here proves fatal to Count IV of Plaintiffs' Complaint.

With respect to the remaining claims challenged by Defendants' motion for summary judgment—claims relating to the New Jersey Sites, claims against Gunna Development and Gundaker Commercial Group, and all claims of unjust enrichment—Plaintiffs have provided sufficient evidence to create genuine issues of material fact.  Accordingly, Defendants' Motion for Summary Judgment is granted only with respect to Count IV of Plaintiffs' Complaint.

### C. Sanctions

Defendants have moved for sanctions pursuant to 28 U.S.C. § 1927 against Plaintiffs based on the alleged "lack of evidentiary support and legal foundation of the New Jersey Site Claims."  (Defs.' Mem Supp. Mot. Summ. J. 24.)  The Court does not find sanctions to be appropriate and denies Defendants' motion.

11

**IV.  CONCLUSION**

For the reasons stated above, Plaintiffs' Motion for Leave to File an Amended Complaint is granted.  Furthermore, Defendants' Motion for Summary Judgment is granted with respect to Count IV and denied in all other respects.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


ANTHONY TOSCO                                          :

    and                                               :

TOSCO ELITE, LLC                                       :                    Civil Action No.

             Plaintiffs,                   :

                                               :                    07-324

            v.                              :

                                                 :

BALDRIDGE REAL ESTATE, INC.;                           :

GUNNA DEVELOPMENT, LLC;                                :

GUNDAKER COMMERCIAL GROUP;                             :

BALDRIDGE-MIDDLETOWN, LLC aka                          :

        GUNNA-MIDDLETOWN, LLC;                  :

BALDRIDGE-BRICK, LLC aka                               :

        GUNNA-BRICK, LLC;                       :

BALDRIDGE-BAYVILLE, LLC aka                            :

        GUNNA-BAYVILLE, LLC; and                :

BALDRIDGE-RIO GRANDE, LLC aka                          :

        GUNNA-RIO GRANDE, LLC.                  :

                     Defendants.              :


<u>**ORDER**</u>


      **AND NOW**, this 10th day of July, 2008, upon consideration of Plaintiffs' Motion

for Leave to File an Amended Complaint, (Docket No. 15), Defendants' Response thereto

(Docket No. 21), and Plaintiffs' Rebuttal (Docket No. 23); as well as Defendants' Motion for

Summary Judgment and Motion for Sanctions (Docket No. 24), Plaintiffs' Response thereto

(Docket No. 26), Defendants' Response in Opposition (Docket No. 28), and Plaintiffs'

Supplemental Memorandum (Docket No. 29), it is hereby **ORDERED** as follows:

1.  Plaintiffs' Motion for Leave to File an Amended Complaint is **GRANTED**.

2.  Defendants' Motion for Summary Judgment and Motion for Sanctions is **GRANTED IN PART** and **DENIED IN PART**, as follows:

      A.  Defendants' Motion for Summary Judgment is **GRANTED** as to **Count IV** of Plaintiffs' Complaint.

      B.  Defendants' Motion for Summary Judgment is **DENIED** as to all other Counts.

      C.  Defendants' Motion for Sanctions is **DENIED**.

      D.  A **STATUS CONFERENCE** is scheduled for <u>Wednesday, July 23, 2008 at 10:00 a.m.</u> in the chambers of the undersigned to discuss, *inter alia*, a new scheduling order and ADR options.

BY THE COURT:

 *s/ Ronald L. Buckwalter* 
RONALD L. BUCKWALTER, S.J.